Julia SANTOS, Plaintiff–Appellant,

v.

**KNITGOODS WORKERS' UNION, LOCAL 155, and Patricia Grosso, As President of Knitgoods Workers' Union, Local 155, Unite, Defendants–Appellees.**

Docket No. 00–9284.

United States Court of Appeals, Second Circuit.

Argued April 27, 2001.

Decided June 5, 2001.

James W. Devor, New York, NY, for Plaintiff–Appellant.

Eric B. Chaikin, Chaikin & Chaikin, New York, NY, for Defendants–Appellees.

Before: JACOBS, PARKER and KATZMANN, Circuit Judges.

PER CURIAM:

Plaintiff Julia Santos worked as an organizer for the Knitgoods Workers' Union, Local 155 ("the Union"). Three weeks after she began medical leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq,* she was terminated for reasons that were neither discriminatory nor retaliatory. Although Santos had accrued ample sick leave, the Union ended her sick pay on the day she was terminated, consistent with the Union's personnel policy. Santos alleges that, notwithstanding her termination and the Union's sick leave policy, she is entitled under the FMLA to payment of accrued sick leave for the remaining nine weeks of the twelve guaranteed by the FMLA. The United States District Court for the Southern District of New York (Jones, B.) granted defendants' summary judgment motion and dismissed this claim on the ground that Santos had no entitlement to be paid for additional accrued sick days under the FMLA absent a showing that she was terminated for an unlawful purpose. *See Santos v. Knitgood Workers' Union, Local 155,* No. 99 Civ. 1499, 1999 WL 397500 (S.D.N.Y. June 11, 1999). We affirm.

## BACKGROUND

The material facts in this case are not in dispute. Santos worked as a union organizer from 1988 until her termination on February 28, 1997. In or about October 1994, Santos received a booklet entitled "ILGWU Employee Benefits for Staff and Office, Clerical and Miscellaneous Employees," which sets forth the following practices and policies concerning sick leave:

> Employees accumulate sick leave at the rate of one and one-half days for each full month (or major fraction thereof) that the person had been employed by the Union ... The total amount of sick leave time an employee can accumulate is 150 work days.
>
> *Note: You will not receive any benefit for unused sick leave upon termination of employment.*

(emphasis added). With respect to benefits under the FMLA, the same booklet states:

> Under the FMLA, eligible employees will be granted unpaid leave of up to 12 weeks during any 12 month period for one or more of the following reasons: ... for a serious health condition that makes the employee unable to perform his/her job. *An eligible employee may elect,* or the Union may require an employee, *to substitute certain accrued paid leave for unpaid leave.* Furthermore, to the extent that current family or medical leave benefits exceed those provided under the FMLA, the current benefits will prevail.

As of February 1997, Santos was an "eligible employee" entitled to take up to twelve weeks of leave pursuant to the FMLA.[1] Under her employer's sick leave

---

1. "The term 'eligible employee' means an employee who has been employed—(i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title and (ii) for at least 1,250 hours of service with such employer during the previous 12–month period." 29 U.S.C. § 2611(2)(A). Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month pe-

policy, Santos had accumulated the 150–day maximum of accrued, paid sick days. On February 10, 1997, Santos was felled by a medical condition that continues to render her totally disabled; she has not sought restoration to her position. Within a week of becoming ill, Santos sent a letter and a physician's note to the Union explaining her inability to work.

Santos was terminated from her position effective February 28, 1997.[2] She received sick pay from February 10, 1997 until February 28, 1997—three of the twelve weeks of FMLA leave to which she now claims entitlement—but the Union refused to pay for any additional sick leave she had accrued following her termination.

On February 26, 1999, Santos filed a complaint in federal court alleging that defendants: (i) interfered with her entitlement to a full twelve weeks of FMLA leave by ending her employment three weeks into the twelve week medical leave and by refusing to continue paying accrued sick pay (in the amount of the difference between her salary and the disability benefits) for the remaining nine weeks, in violation of § 2615(a)(1),[3] and (ii) failed to pay her the balance of her accrued sick days, in violation of New York law. The complaint acknowledged that Santos has remained unable to perform the duties of her employment, and conceded that it is the

Union's policy that all accumulated but unused sick leave time is forfeited upon termination of employment. Defendants moved to dismiss Santos' first claim for failing to state a claim under the FMLA, arguing that the statute does not prevent an employer from implementing its policy to end sick pay after termination if the termination is not itself discriminatory or retaliatory under the FMLA. The district court agreed that the complaint "nowhere" alleges retaliation, but in aid of judicial economy and in light of the closeness in time of the FMLA leave and termination, afforded Santos an opportunity to amend her complaint and to conduct some discovery.

Santos filed an amended complaint on June 25, 1999, again claiming entitlement to sick pay regardless of whether or not her termination was retaliatory, again alleging the state law claim, and adding a claim for retaliatory termination. After discovery, and the making of further dispositive motions, the court granted defendants' motion to dismiss Santos original FMLA claim, but refused to dismiss Santos' claim of retaliation, and directed the parties to file a Joint Pre Trial Order in anticipation of trial on the remaining FMLA and state claims. The parties entered into a stipulation, however, designed to ripen this appeal, that dismissed the

---

riod for one or more of the following: ... (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." *Id.* § 2612(1)(D).

**2.** The parties dispute whether Santos was on notice that she would be terminated before she applied for medical leave. The Union insists that it notified Santos well before she began her medical leave that she was slated for termination. However, Santos "vehemently denies she was placed on *any* notice of her pending 'layoff' prior to the onset of her 'serious health condition' and, in any event, it is undisputed that she did not receive *written*

notice of her discharge until *after* its effective date." In any event, Santos' counsel conceded at oral argument that she cannot make out a claim for discriminatory or retaliatory termination. In view of this concession, and the explicit disavowal of such a claim by dint of the joint stipulation, we treat Santos' termination as a lawful employment action for purposes of this appeal.

**3.** "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." § 2615(a)(2).

retaliation claim with prejudice, dismissed the state claim without prejudice, and essentially stipulated to entry of judgment dismissing Santos' original FLMA claim.

In "so ordering" this stipulation, the district court directed the Clerk of Court to enter judgment for defendants and to close the case. The sole issue on appeal is whether the district court erred in granting summary judgment to defendants on Santos' claim that she had an entitlement under the FMLA to payment of accrued sick pay for the full twelve weeks of FMLA leave notwithstanding her employer's policy of ending sick pay on termination of employment.

## DISCUSSION

The FMLA allows employees "to substitute any of the accrued paid ... sick leave ... for ... any part of the 12–week period of such leave [provided for in the FMLA]." 29 U.S.C. § 2612(d)(2)(B). However, this right does not create or supplement employer benefits. A proviso in § 2612(d)(2)(B) states that "nothing in this title shall require an employer to provide paid sick leave ... in any situation in which such employer would not normally provide any such paid leave." *Id.* This proviso is clarified by a Department of Labor ("DOL") interpretive regulation:

Substitution of paid sick/medical leave may be elected to the extent the circumstances meet the employer's usual requirements for the use of sick/medical leave. An employer is not required to allow substitution of paid sick or medical leave "in any situation" where the employer's uniform policy would not normally allow such paid leave.

29 C.F.R. § 825.207(c).

As Santos acknowledges, the Union would not normally provide "any benefit for unused sick leave upon termination of employment"; so (to paraphrase the DOL interpretive regulation) "in [this] situation," "the employer's uniform policy would not normally allow such paid leave." The Union therefore was not required to continue paying Santos for her accrued sick leave after her termination was effective.

Another administrative regulation speaks directly to this issue:

An employee has no greater right to reinstatement *or other benefits* and conditions of employment than if the employee had been continuously employed during the FMLA leave period.... For example: (1) *If an employee is laid off during the course of taking FMLA leave and employment is terminated, the employer's responsibility to continue FMLA leave ... cease[s] at the time the employee is laid off.*

29 C.F.R. § 825.216(a) (emphasis added).

This Circuit has had little occasion to interpret the FMLA, and we have not addressed the issue in this case. But decisions from other courts reinforce the proposition that the FMLA neither creates nor supplements an employer's obligation to pay benefits. *See, e.g., O'Connor v. PCA Family Health Plan, Inc.,* 200 F.3d 1349, 1354 (11th Cir.2000) ("An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period"). Thus, in *Carrillo v. National Council of Churches,* 976 F.Supp. 254, 256 (S.D.N.Y.1997), Judge Rakoff observed that "the FMLA [ ] provides that an employee on protected leave is not entitled to any greater rights or benefits than he would be entitled to had he not taken the leave," and held that where the employer announced its decision to terminate a plaintiff before that plaintiff went on medical leave, plaintiff was "not denied any

right for none was preserved". *Id.* And in *Bond v. Sterling, Inc.,* 77 F.Supp.2d 300, 304 (N.D.N.Y.1999), Judge McAvoy ruled that "[a]n employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request." *Id.* (quotation omitted).

Santos points to FMLA language that "[t]he taking of leave under [29 U.S.C. § 2612] shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced," 29 U.S.C. § 2614(a)(2), and emphasizes that her sick leave had already accrued. But her employer's personnel policy specified the terms and conditions of the accrued benefit, and provided in relevant part that it was forfeited, notwithstanding accrual, upon termination. Since the termination itself did not violate the FMLA, and since her loss of accrued sick leave was the consequence of termination under her employer's normal policy, Santos suffered no "loss of any employment benefit" within the meaning of the FMLA. *See Gunnell v. Utah Valley State College,* 152 F.3d 1253, 1263 (10th Cir.1998) (employee who disavowed claim under § 2615(a)(2) (discrimination) could not maintain her FMLA claim because "having specifically refuse[d] to argue that she was fired because of her FMLA request[,] . . . any reasons for terminating [plaintiff's] employment would not involve [the] FMLA, and consequently that statute can offer [plaintiff] no relief.").

Taking a slightly different tack, Santos argues that her rights to FMLA leave "vested" as soon as she exercised her FMLA rights prior to her termination, and that these FMLA rights cannot be abridged by virtue of her termination. The short answer is that the application of her employer's normal policy concerning sick leave after termination is not inconsistent with the FMLA, so that the "vesting" of FMLA rights did limit her employer's implementation of its normal policy.

The judgment is affirmed.